HENRY H. PRYOR, Appellant, *v.* THE CITY OF ROCHESTER, Respondent.

MUNICIPAL CORPORATIONS — CITIES OF SECOND CLASS — SALARIES OF CITY OFFICIALS FIXED BY BOARD OF ESTIMATE AND APPORTIONMENT CANNOT BE REDUCED BY COMMON COUNCIL. The power of the board of estimate and apportionment of a city of the second class to fix the salary of a deputy comptroller appointed by the comptroller is absolute under the act relating to cities of the second class (L. 1898, ch. 182, § 98), conferring upon such board authority to fix the salary of all city officers, except as otherwise provided, which, it is declared, shall not be changed until the expiration of their terms, and no authority to reduce such salary is conferred upon the common council by section 96, requiring the submission to it by such board of an estimate of the sums deemed necessary to conduct the business of the city in each department, and providing that after a hearing thereon the common council may adopt or reject any "item" therein, since such power is limited to items which are estimated and does not include those which are fixed by or under other and positive provisions of statute.

*Pryor* v. *City of Rochester*, 57 App. Div. 486, modified.

(Argued March 4, 1901; decided April 23, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 14, 1901, upon the submission of a controversy under sections 1279–1281 of the Code of Civil Procedure.

The defendant is a city of the second class, to which chapter 182, Laws 1898, and acts amendatory and supplementary thereto apply. In November, 1899, James Johnston was elected comptroller of the city of Rochester, duly qualified, and has since performed the duties thereof. On March 1, 1900, he appointed the appellant deputy comptroller, who immediately filed his oath of office and entered upon the discharge of its duties. On February twenty-seventh the board of estimate and apportionment estimated the several sums which it deemed necessary to be raised to pay the expenses of each department and office in the city. The sum of nineteen thousand dollars was estimated as the amount necessary to

defray the expenses of the comptroller's office.   This estimate was filed with the common council, which, on March twenty-seventh, reduced the amount from nineteen thousand dollars to thirteen thousand fifty-seven dollars, and as reduced, adopted it.   On the eighth of August the board of estimate and apportionment fixed the plaintiff's salary as deputy comptroller at the sum of twenty-two hundred dollars per annum, payable monthly.   On the eleventh of October he presented to the comptroller and treasurer of the defendant his duly verified claim for his salary from March to September, inclusive, at that rate, and duly demanded payment thereof, which was refused.   On May eighth the council adopted an ordinance purporting to reduce the salaries of city officers and employees, including the plaintiff, from the amounts fixed by the board, provided that the comptroller in making lists should base them upon the salaries recommended by the council ; that the city treasurer in issuing checks for their services should require each to execute a full release of all claims against the city for services rendered during the period for which the check was issued, and that he should not give or issue to any officer or employee any check for services until such a release was executed.

The court below rendered judgment for the plaintiff for eleven hundred sixty-six dollars and sixty-seven cents, which was his salary for the time mentioned at the rate of two thousand dollars a year.   In the court below two questions were presented :  1. Whether the plaintiff was entitled to recover from the time of his appointment, or whether from the time of filing his bond ; and, 2. Whether he was entitled to judgment for his services at twenty-two hundred dollars a year, being his salary as established by the board, or at the rate of two thousand dollars, the amount sought to be established by the common council.

*John Desmond* for appellant.   The board of estimate and apportionment alone has power to fix the salary of the plaintiff as deputy comptroller.   (L. 1898, ch. 182, § 98.)

*James Breck Perkins* for respondent. The common council of the city of Rochester had the right to reduce the salary of the deputy comptroller below the sum fixed by the board of estimate. (*Butts* v. *Wood*, 37 N. Y. 317; Suth. on Stat. Const. § 239; *Cricket* v. *Ohio*, 18 Ohio, 9; *People* v. *Palmer*, 109 N. Y. 110.)

Martin, J. While two questions were submitted to the Appellate Division for determination, only one is presented by this appeal. Whether the appellant's salary commenced at the time of his appointment or whether when his bond was filed, has been decided in his favor, and as the defendant has not appealed that question is not presented. Whether, under the general act relating to the government of cities of the second class, the power to fix the plaintiff's salary as deputy comptroller conferred upon the board of estimate and apportionment was absolute or merely provisional and subject to change by the common council, was the subject chiefly discussed upon this appeal. The appellant claims that the authority of the board was absolute, and could neither be reviewed nor the amount of his salary as fixed by it changed; while the respondent insists that its action was merely initiative, could be reviewed, and the salary diminished by the council.

As all statutes and ordinances inconsistent with chapter 182, Laws 1898, were repealed by that act (§ 482), to a complete understanding of this question and a proper appreciation of the power and authority conferred upon the several branches or instrumentalities of the municipal government of cities of the second class, it becomes necessary to consider that statute, for upon its interpretation this appeal depends.

Before particularly examining its provisions which especially relate to the question under consideration, it may be well to ascertain the general scheme and purpose of the act, for when its general plan and object are understood we shall better comprehend it and thus be enabled to more clearly appreciate and more correctly interpret the provisions which

relate to the particular subject of this investigation. The idea upon which that act seems to be based emanated from the constitutional convention of 1894. The Constitution, as amended and adopted by the People, provides: " All cities are classified according to the latest state enumeration, as from time to time made, as follows: The first class includes all cities having a population of two hundred and fifty thousand, or more; the second class, all cities having a population of fifty thousand and less than two hundred and fifty thousand; the third class, all other cities. Laws relating to the property, affairs or government of cities, and the several departments thereof, are divided into general and special city laws; general city laws are those which relate to all the cities of one or more classes; special city laws are those which relate to a single city, or to less than all the cities of a class. Special city laws shall not be passed except in conformity with the provisions of this section." Then follows a restriction upon the power of the legislature to pass local laws relating to cities of the second class, without first submitting them to both the mayor and common council. (N. Y. Constitution, art. XII, § 2.)

In May, 1895, the legislature passed an act providing that the governor should appoint five commissioners to investigate the subject and to prepare and submit to it such proposed general city laws relating to the property, affairs or government of cities of the second class and the several departments thereof, and such additional general city laws as, in the opinion of such commission, were proper and necessary for the government of cities of that class as contemplated by article twelve of the Revised Constitution. (L. 1895, ch. 548.)

In pursuance of that authority, a commission was appointed, of which Judge Earl was chairman, which, after a careful study and investigation of the subject, prepared a proposed act essentially like that adopted by the legislature and a report which was transmitted to the legislature in February, 1896. In stating the purpose of the proposed law as to the duties and powers of the common council, the commissioners in their

report said: "We propose that the common council shall be purely a legislative body, and that it shall have nothing to do with appointments to office, with the execution of contracts, with the employment of labor, or the purchase of materials, or with the expenditure of money for any purpose whatever: and thus, as it will have no patronage, no power to expend money which it appropriates, there will be very little inducement to extravagant or corrupt local legislation." As to the executive or administrative functions of the city, and by whom they were to be administered, the committee reported: "We propose to give the mayor large power and great responsibility. He is the executive head of the city government. He appoints, and, under certain conditions, may remove nearly all the city officers; and thus he can hold them all to responsibility for the manner in which they discharge their duties. He, himself, after a hearing and trial of charges preferred against him, may be removed from his office by the governor. Thus, if there be bad administration of city affairs, it is easy for the electors to place the responsibility and to apply the remedy at the polls." (Senate Documents, 1896, vol. 5, No. 24.)

It is to be observed that the act of 1898 is a general city law which was passed in pursuance of the provision of the Constitution providing for general laws in relation to cities of each class, and must be considered and interpreted as a general and not a special statute.

Upon a consideration of the act as adopted, it is seen that "The legislative power of the city is vested in the common council thereof, and it has authority to enact ordinances, not inconsistent with the laws of the state, for the government of the city and the management of its business, for the preservation of good order, peace and health, for the safety and welfare of its inhabitants, and the protection and security of their property; and its authority, except as otherwise provided in this (that) act, or by other laws of the state, is legislative only" (§ 12); that "No member or committee of the common council has power to employ any person, incur any expense or

purchase any material, for, or on behalf of the city or any of its officers, boards or commissions, except as otherwise expressly provided in this act " (§ 18); and that the common council " shall not at any time pass any ordinance directing or interfering with the exercise of the executive functions of the officers, departments and boards of the city as provided by this (that) act or the other laws of the state " (§ 31).

Thus the provisions of this statute relating to the powers and duties of and restrictions upon the common council, disclose that the avowed purpose of the commissioners as sought to be effectuated by the proposed act accompanying their report was adopted and intended to be carried into effect by the legislature, presumably for the reasons stated in their report. The controlling purpose of the act seems to have been to essentially restrict and in many instances abolish the powers which had been previously conferred upon and exercised by those bodies, and to confer all executive and administrative power upon other officers and boards.

Examining the statute with a view of ascertaining the officers and bodies who were to control the affairs of the city, except such as were legislative, we find that the executive power is vested in the mayor, and in such officers and departments as are or may be created by law or by ordinance (§ 42); that, except as otherwise provided therein, the mayor is to appoint and may remove all city officers (§ 49); and that a comptroller was to be elected at the same time as the mayor, who shall receive a salary of thirty-five hundred dollars; that he shall hold his office for two years; that he may appoint to hold office during his pleasure a deputy and such other subordinates as may be prescribed by the board of estimate and apportionment (§ 61); while section 98 declares: " The board of estimate and apportionment has authority to fix the salaries or compensation of all city officers and employees, except as otherwise provided in this act, and except as to such officers and employees as are required to serve without compensation. But the salary or compensation of every officer and employee shall be thus fixed before his election or appointment, except

.in the first instance after this act takes effect, and shall not thereafter be changed until the expiration of the term for which he was elected or appointed."

These provisions render it obvious that the general scheme and intent of the legislature was that the common council should be vested only with legislative power and be deprived of any authority to incur any expense whatever on behalf of the city or any of its departments, unless there was some express provision to the contrary, and, in the absence of any provision authorizing it, it should in no way direct or interfere with the functions of the executive and administrative officers or boards. It is equally clear that the legislative purpose was to confer all the executive and administrative powers of the city upon the mayor and such officers and departments as were created by law or ordinance, and that all the city officers, except as otherwise specially provided, should be appointed by him and removed at his pleasure, thus imposing upon him, as mayor, the entire responsibility of the appointments to office and of the administration of the affairs of the city, to the end that there might be a responsible head, which, if unsatisfactory, could be deposed by the electors of the city and existing evils consequently corrected.

This brings us to a consideration of the precise question presented and of the provisions of this act which are specially applicable to it. It provides for the election of a comptroller, establishes his salary, states the tenure of his office, confers upon him authority to appoint during his pleasure a deputy, in express terms authorizes the board to fix his salary, and declares that, except in the first instance, it shall be fixed before his election or appointment, and shall not be changed until the expiration of his term. As express authority was conferred upon the comptroller to appoint a deputy, and as the plaintiff was appointed, he was an officer of the city whose term of office and compensation were controlled by section ninety-eight, which expressly vested in the board the power to fix his salary, not to be changed during his term. It having been fixed at twenty-two hundred dollars a year, he was plainly

entitled to compensation for the time he had served at that rate, unless there is some other provision of the act which authorized the common council to reduce that amount.

The only provision upon which the respondent relies to justify the reduction of the plaintiff's salary and to establish its claim that the council could readjust or reduce the amount as established by the board, is section ninety-six of the act under consideration. That section, after providing that the mayor, the comptroller, the corporation counsel, the president of the common council, and the city engineer shall constitute the board of estimate and apportionment, requires it to make an estimate of the several sums which it deems necessary to raise by tax to pay the expenses of conducting the business of the city in each department and office thereof, and for the various purposes contemplated by that act; that after it has made such estimate, it shall submit it in writing, with such reasons for it in detail as it may have to give to the common council, which shall convene and consider such estimate; that any taxpayer may be heard in reference thereto, and that after such hearing the common council may adopt such estimate as submitted, or diminish or reject any item therein, except such as relates to the city debt, and adopt the estimate as thus amended; and that when adopted it shall be entered in the minutes and published in its proceedings, and the several sums in the estimate so adopted shall be and become appropriated for the several departments, offices and purposes named in the estimate for the ensuing fiscal year. Then in specific terms it prohibits the several officers, boards and departments from incurring any debt or liability in excess of the sums so allowed, forbids their entering into any contract or purchase, or the making of any improvements or repairs which involve an expenditure or liability which exceeds the amount that has been thus estimated and allowed.

The contention of the respondent is that the power upon the presentation of such an estimate to diminish or reject any item thereof, authorized the common council to control the salaries or compensation of the officers and employees of the

city, even though they were expressly established by statute or under the provisions of that act. It is hardly contended that this provision, standing alone, is sufficiently clear and comprehensive to repeal or control the positive and specific provisions of the act in regard to fixing by the board of the salaries or compensation of the officers and employees of the city.

The chief argument against interpreting the sections expressly relating to that subject according to their plain and obvious meaning, as clearly expressed by the language employed, is that it would be a dangerous power to confer upon the board for the reason that the mayor and two of his appointees are members and constitute a majority, so that the effect would be to practically confer upon the mayor the power to regulate the compensation of the various officers and employees of the city. This seems to be regarded as a dangerous innovation on the authority which has hitherto been exercised by the common council, but the experience of most cities has been such as to greatly diminish, if not destroy, any serious apprehension in that regard. It has taught that practically all the irregularities, extravagances and corruption that have infested city governments and the administration of their municipal business and affairs, have had their inception and found their power of execution in or through the common council or its committees and members.

In this connection it is well to remember that the commission which prepared this act expressly avowed an intention to give the mayor large powers and great responsibility, among which was the appointment of nearly all the executive and administrative city officers, so that he would be held answerable for the manner in which their duties were discharged, and thus become practically the responsible head of the executive and administrative affairs of the city, accountable for any neglect or wrongdoing which might exist and for which he would be amenable and which could be reached and a corrective remedy applied at the polls. Thus it is clear that the power and responsibility conferred upon the mayor, which

forms the basis of the respondent's argument, was intended by the commission, and, when adopted, must have been intended by the legislature. This becomes more manifest in view of the fact that the legislature itself changed the original act by transferring from the common council to the board the power to fix the salaries of the officers and employees of the city. This cannot be regarded otherwise than as a practical declaration by the legislature that the power to fix the salaries or compensation was intended to be vested in the board and not in the council. If the common council was authorized to fix the salaries or compensation of the officers and employees of the city, it would result to some extent at least in enabling it in effect to control their appointments as well. Hence, we think that no weighty nor even valid argument to sustain the contention of the respondent can be based upon the extent of power thus conferred upon the board, or upon the fact that the mayor may be the controlling element in the administrative affairs of the city government.

Aside from that argument, the respondent's contention rests solely upon the claim that the word " item " in section ninety-six applies to every particular item in the estimate of each department, whether estimated or established by or under the law, and, hence, the common council may practically fix the compensation of the officers and employees of the city. If such a construction were to obtain, it would render nugatory the express provisions of the act as to when, by whom, and for what length of time the deputy comptroller's salary should be fixed. Without attempting to follow the discussion of counsel upon the question whether the word " item " relates to every particular statement in the estimate of each department, or to the whole estimate for such department, it seems plain that the language of section ninety-six is insufficient to overcome or nullify the provisions of section ninety-eight, which confers upon the board the absolute power to fix the compensation of such officers and employees.

Abundant effect may be given to the word " item " as it appears in that section, even if construed as claimed by the

respondent, provided it is limited to items which are esti-
mated and is *not extended to those which are fixed by or
under other and positive provisions of statute.*  If it be held
that this provision relates to items which are estimated and
not to those which are fixed by statute or in pursuance of
direct provisions of law, it will be given effect and the act is
entirely harmonious.  But to sustain the contention that this
provision confers upon the council the right to diminish or
reject any item contained in the statement, and that it involves
an inclusion of power to ultimately fix the salary or compensa-
tion of the officers and employees of the city, would at once
render it utterly repugnant to many of the provisions of that
act.  Moreover, in interpreting this statute, it is to be sup-
posed that if it had been the intention of the legislature that
the board should merely recommend the compensation and
that the council should ultimately fix the amount, it would
have expressed that purpose in clear and unmistakable terms.

We think a fair and proper interpretation of this statute
renders it clear that the legislature intended that to the board
and not to the council should be confided the power to fix
such salaries or compensation ; that as to any of the items con-
tained in the statement of the board which were in fact esti-
mates and not fixed and existing liabilities established by law,
the common council had power to diminish or reject, but that
as to those which were thus established it possessed no such
power.

Although we are clearly of the opinion that the authority
to fix the compensation of officers and employees of a city of
the second class is, by the act of 1898, vested in the board of
estimate and apportionment, yet it by no means follows that
the common council can in no way regulate or control the
amount to be appropriated to the support and maintenance of
the city government and the conduct of its affairs.  As the
legislative branch of the municipal government, it has the
power to legislate as to all matters relating to its affairs except
so far as it is restricted by the statute under consideration or
other statutes of the state.  Among other legislative powers

it has authority to abolish offices of the city in the interest of economy or for other proper reasons (*People ex rel. Dunn* v. *Ham*, 166 N. Y. 477), and in many ways to reduce and control the expenditures of the municipality, as will be readily seen by reference to section twelve. No appropriation of money to be raised by a tax can be made without the action of the common council. It may, therefore, by refusing to appropriate the amount called for by the board, limit the expenditures of any office or department to the amount appropriated, and thus lessen the expenses of the city government. This, however, is not an absolute right except as to matters which are not established or controlled by statute. So far as a statute establishes a positive right, it must be regarded as a modification of section ninety-six, withdrawing from the council the legal right to refuse to appropriate the money necessary to pay such claim.

While we think the statute under consideration shows plainly that the legislature intended to confer upon the board the power to fix the compensation of its officers and employees, yet it intended to confer upon the common council power to refuse to appropriate the full amount recommended by the board for each department or office of the city, if it regarded it extravagant or more than necessary for that purpose. It might reduce the appropriation to an amount only sufficient to pay the charges fixed and established against the municipality by law, in which case it would be the duty of the officer or department to which the appropriation was made to devote the money thus appropriated to those purposes and no other. If the appropriation was less than the charges which were fixed by statute, it would doubtless be the duty of the disbursing officer to pay from the funds in his hands, to the exclusion of all other claims, such established liabilities of the municipality until the fund was exhausted, when the right to enforce the claims so fixed would mature and might be enforced by law.

In this case, however, as the record does not show that the funds appropriated to the comptroller's department were

insufficient to pay the plaintiff's claim when demanded, he was entitled to recover the full amount of his compensation then due at the rate fixed by the board.

The judgment awarded by the learned Appellate Division should be modified by increasing the amount of the plaintiff's recovery to the sum of $1,283.33, and as modified affirmed, without costs to either party.

VANN, J. (dissenting). While cities of the second class commit immense power to their mayors, they still retain the common council but confine it to strictly legislative duties. From time out of mind the control of taxation and the appropriation of public moneys has been the fundamental and exclusive duty of legislative bodies. Government is not free unless the power to tax belongs to the legislative department. The executive department spends the money raised by taxation, but the legislative department, which more directly represents the people, determines how much is to be spent, and for what purposes. The power to expend and the power to appropriate are kept separate, for the union of the two is dangerous and may leave the people helpless. " If the power over the public treasury, and that of imposing taxes, be left to the executive, there is an end to public liberty. * * * It is not only necessary for vigorous civil liberty that the legislature keep the purse-strings of the public treasury, but also that the same principle be acted upon in all minor circles of the vast public fabric." (Lieber's Civil Liberty, 148, 149.)

According to the construction placed by the prevailing opinion upon the charters of four large cities of the state, the executive department has substantial control of the sum to be raised by taxation for municipal purposes. The mayor controls the executive department, including the board of estimate and apportionment, for his own vote and that of two of his appointees, who are removable by him at will, constitute a majority of the votes in that board. The practical effect of this construction, therefore, is to confide to the will of one man the powers of the executive department, and the most

important of all the powers, which, according to the history of
free government, belong to the legislative department. If the
legislature intended to make such a radical departure from
established methods of government, the presumption is that it
would have expressed that intention in words so clear as not to
admit of discussion. If there is any doubt as to the intention,
it should be solved in favor of the people and against the
exercise of arbitrary power. If the question is fairly debata-
ble, it should be settled in the interest, not of those who
govern, but of those who pay the expense of government.

While the city budget is initiated by the board of estimate
and apportionment, it is actually made by the common council.
The duty of the former, as its name indicates, is not to make
appropriations, but estimates. Its members are required to
" make an estimate of the several sums of money which they
deem necessary to be raised by tax to pay the expenses of
conducting the business of the city in each department and
office thereof,   *   *   *."   (L. 1899, ch. 581, §§ 7, 96.)   This
estimate is not final, for if it were, it would constitute the tax
budget. What is the further duty of the board? The same
section provides by the next sentence that " after it has made
such estimate, it shall submit it in writing with such reasons
for it in detail as it may have to give, to the common council
which shall convene and consider such estimate." Here the
duty of the board ends and that of the common council begins.
The board has simply made an itemized statement of the
sums which in its judgment will be needed to run the city
government for the fiscal year, and has added its reasons
therefor. This estimate is in the nature of information, advice
and recommendation, for the board must give its reasons in
detail in its report to the common council. In one respect it
is final, for it places a limit upon the action of the common
council, which cannot " increase any item in such estimate."
Can it diminish an item? If not, what can it do? Is it an echo
of the executive board, or a legislative body clothed with
control over appropriations? The charter answers these ques-
tions by providing, in connection with the provisions quoted

71

above, that the common council " shall convene and consider
such estimate     *     *     *     hear any taxpayer who wishes to
be heard in reference thereto, and after such hearing it may
adopt such estimate     *     *     * or diminish or reject any item
therein contained, except such as relate to the city debt, and
adopt the estimate as thus amended, but it shall not increase
any item for any department, office or purpose." The esti-
mate, as adopted with or without amendments, becomes the
tax budget, and " the several sums     *     *     * so adopted
*     *     * become appropriated for the" purposes indicated
and for those purposes only.

This seems plain. The board recommends and the common
council acts. The executive branch estimates and the legisla-
tive branch reviews, amends and adopts. Its freedom of
action is absolute with two exceptions; it cannot increase any
item and it cannot diminish the item relating to the city debt.
By express terms it is given power to reject any item entirely,
or to diminish any item, subject to the single limitation
designed to protect the credit of the city. If it cannot
diminish the salary list, why was not this made an express
exception also ? Does not the mention of one item imply the
exclusion of all others, in accordance with the familiar rule of
*expressio unius, exclusio alterius ?*

But it is said that these clear provisions of section 96 are
modified by section 98, which provides that the board " has
authority to fix the salaries or compensation of all city officers
and employees, except as otherwise provided in this act," and
that " the salary or compensation of every officer and employee
shall be thus fixed before his election or appointment." (L.
1898, ch. 182, § 98.) It is claimed that the effect of this sec-
tion is to place the salary list of officers and the compensation
of employees absolutely beyond the control of the common
council and to confide it wholly to the board of estimate, with
no limitation in the charter upon its power. What reason is
there for such a discrimination ? It does not aid the taxpayer,
but the officeholder, for the common council can increase no
item. Why should the legislature surround the salaries of

city officials with the same protection as the city debt, without including any other subject of expenditure? Are salaries more important than safe bridges or clean streets?. If restraint is to be placed upon any class of expenditures, what class needs it more than the salaries of the political favorites of the executive department? What object is there in withholding from the consideration of the city legislature the subject involving the largest expenditure, the widest latitude of judgment and the greatest danger of abuse? Why should the appropriations which are of the greatest benefit to the people, such as those relating to public improvements, the care of streets and the like, be referred to the common council with power, and the salary list, which mainly benefits officeholders, be taken away from the members of the city legislature, elected by the people and in close touch with them, and placed under the control of the mayor and his board? Is it not a violation of legislative precedents to permit the appointing power to unalterably fix the compensation of its own appointees? Did the legislature intend that if the board of estimate fixed the compensation of the poundmaster at $10,000 a year the common council could not reduce it? Did it mean that the city legislature could diminish the sum needed for a new fire engine, but not the compensation of the driver? Suppose they gave a bookkeeper in the comptroller's office a larger salary than was fixed by the legislature for the comptroller himself or a messenger or elevator boy more than is paid to the governor of the state? Or suppose they fixed a salary list that would bankrupt the city except for the two percentum clause of the Constitution? (Art. 8, § 10.) It is not an answer to say that no board of estimate would be guilty of such outrages, because the history of municipal government shows that cities have been despoiled in violation of law, while spoliation in this form would have the sanction of law. If, as is said to be the case, it costs one second-class city fifty cents to spend a dollar and another a dollar to spend fifty cents at the ratio borne by salaries to all other expenditures, it illustrates what boards of

estimate are capable of doing, and shows the necessity of a rigid construction of their powers. A construction leading to an absurd, unjust and unreasonable result does not ordinarily carry out the legislative will and should be avoided unless no other is possible. There should be a liberal construction in the interest of economy and a strict construction against extravagance.

These observations bring me to the ultimate question which must control our decision ; is the power to fix salaries conferred by section 98, subject to the power of the common council to reduce them conferred by section 96 ? Either section 96 is subject to section 98 or the latter is subject to the former. Section 96, when read by itself, does not exclude the salary list, either expressly or impliedly, while section 98 confers authority to fix salaries, " except as otherwise provided by this act." To what does this exception relate ? It may relate exclusively to the salaries fixed by the legislature, such as those of the mayor, comptroller, etc., or it may relate also to the power of the common council to " diminish   *   *   * any item " as conferred by section 96. If either construction is possible that should be adopted which is the more reasonable, for that is presumed to better express the legislative will. I think the construction which makes section 98 subordinate is the true one, because it harmonizes the apparent conflict between the two sections, tends to protect the taxpayer from the most dangerous form of extravagance and places the taxing power in the legislative department where it belongs. It is confirmed by the right of the taxpayer to be heard by the council, but not by the board. Any other construction would not only vest practically in one man an extraordinary power, hitherto unknown to our form of government, but would give no force whatever to the general power to " diminish " conferred by section 96, so far as the largest subject of municipal expense is concerned. If the board of estimate alone can irrevocably fix the salary list, it can double it or quadruple it or multiply it indefinitely, subject only to the restraint of the Consti-

tution, to the oppression of the taxpayer, and yet with no increase of benefit to the city. The common council is expressly authorized to "diminish any item" in the estimate of the board. Item does not mean aggregate, but one of the several particulars going to make up an aggregate. Every salary is an item and every salary may be diminished by the common council, as the salary of the plaintiff, in my opinion, was lawfully diminished in the case under consideration.

For these reasons I dissent from the judgment about to be pronounced, and vote in favor of affirming the judgment of the Appellate Division.

BARTLETT, HAIGHT and CULLEN, JJ., concur with MARTIN, J.; O'BRIEN and LANDON, JJ., concur with VANN, J.

Judgment accordingly.