(35 Misc. Rep. 117.)

PEOPLE ex rel. MORRISEY v. BOLAND.

(Supreme Court, Trial Term, Rensselaer County.   May, 1901.)

1. DEPARTMENT OF PUBLIC INSTRUCTION—GOVERNMENT.

Laws 1892, c. 80, provides for the organization of a board of school commissioners of the city of Troy. The charter of the city of Troy (Laws 1892, c. 670), as amended by Laws 1895, c. 277, tit. 2, § 1, provides for seven school commissioners, and authorizes the mayor to suspend them for misconduct in office, and the common council, after hearing, to remove the officer complained of. Laws 1898, c. 182 (White Act), for the government of cities of the second class, which includes the city of Troy, provides that all officers connected with the public schools shall remain in office until their positions become vacant by death, resignation, or removal as thereafter provided, but that the act shall in no way repeal any statute not inconsistent with its provisions. *Held*, that the department of public instruction of Troy is governed by chapter 80, Laws 1892, and the charter of Troy, except where inconsistent with the White act.

2. SAME—REMOVAL OF SCHOOL COMMISSIONER.

Laws 1898, c. 182, makes a school commissioner a city officer, and gives the mayor authority to remove at pleasure any city officer appointed by him. *Held* to repeal the provision of the city charter of Troy, giving the power of removal to the common council, because inconsistent with such power given the mayor under said chapter 182.

Action by the people, on the relation of James H. Morrisey, against Joseph B. Boland, to try title to the office of school commissioner of the city of Troy. Judgment for defendant.

John C. Davies, Atty. Gen., and Charles E. Patterson, for relator. Thomas S. Fagan, for respondent.

CHESTER, J.   This action is one to determine the title to the office of school commissioner in the city of Troy. The relator was appointed to that office on the 8th day of March, 1899, by the then mayor of the city, and he thereupon qualified and entered upon the duties of the office. On September 13, 1900, he was served with a notice from the present mayor that he was removed by him from such office. On the same day the mayor filed a written appointment of the defendant as school commissioner to fill the vacancy in the board of school commissioners for the unexpired term of the relator. Since that time the defendant has been in possession of the office, and has been serving as a member of such board. The relator claims that the mayor had no lawful power to remove him, and the only question presented for determination is whether he had such power. If he had not, the relator is still entitled to the office. If he had, the defendant has been lawfully appointed, and the complaint must be dismissed.

The board of school commissioners of Troy was organized pursuant to chapter 80, Laws 1892. That act provides, in section 1, that:

"The public schools of the city of Troy shall be under the management and control of seven school commissioners, to be appointed by the mayor of said city, who shall be electors and residents of said city, and who together shall constitute a board of school commissioners."

The second section provides that the persons appointed shall be divided into three classes by the mayor, two to hold office for one

.year, two for two years, and three for three years from the second
Tuesday of March after their appointment, and that:

"Upon the expiration of the respective terms of office of the persons so
appointed, their successors shall be appointed in like manner for a term of
three years, which shall be the term of office of school commissioner under
this act. Whenever a vacancy shall arise in said board from any cause,
the mayor of the city of Troy shall in like manner appoint a suitable per-
son to fill such vacancy for the unexpired term of the person whom he is
appointed to succeed."

The act contains no provision with reference to the suspension or
removal from office of the school commissioners. Under the char-
ter of Troy (Laws 1892, c. 670, as amended by Laws 1895, c. 277,
tit. 2, § 1), the seven school commissioners were denominated as
officers of the city, and the mayor was given power by section 2 of
that title to suspend them for misconduct in office or neglect of
duty, based upon written charges. The common council was given
power by the same section to try the charges, and, after notice and
an opportunity to be heard in his defense, to remove the officer com-
plained of from office. This, in brief, is a summary of the laws in
reference to the appointment, suspension, and removal of school
commissioners in Troy in force at the time of the passage of the act
known as the "White Act" (Laws 1898, c. 182), for the government of
cities of the second class, which includes the city of Troy. Section
49 of that act is as follows:

"Except as otherwise provided in this act, the mayor shall appoint all the
·city officers; and except as otherwise provided in this act or in the other
laws of the state, he may remove at pleasure any city officer appointed by
him."

Article 7 of the act last mentioned related to the "department
of public instruction," and provided, in section 240, that "the de-
partment of public instruction shall continue as provided by law."
The other sections of the article, except the last, contained general
provisions as to the powers and duties of the commissioners, the
control of the schools and the school property, and the appointment
of subordinate officers and teachers. The last section related to
the tenure of office, and was as follows:

"Sec. 252. All officers, principals and teachers connected with the public
schools when this act takes effect, shall remain and continue in their re-
spective positions until their positions shall become vacant by death, res-
ignation or by removal under the procedure hereinbefore set forth."

But the next year, by chapter 581, Laws 1899, § 40, all of article
7 was repealed, except section 240, which remains as above quoted.
While this repeal included section 252, which recognized a power of
removal of school officers, it did not repeal section 49, which au-
thorized the mayor to remove at pleasure any city officer appointed
by him. That section remains as enacted in 1898.

The White act contained the following saving and repealing .
clauses:

"Sec. 482. All statutes of the state * * * so far as inconsistent with the
provisions of this act are hereby repealed.

"Sec. 483. Nothing contained in this act shall be construed to repeal any
statute of the state * * * not inconsistent with the provisions of this

act and the same shall remain in full force and effect, when not inconsistent with the provisions of this act, to be construed and operated in harmony with the provisions of this act."

It results from the legislation referred to that the department of public instruction in Troy is governed by chapter 80, Laws 1892, and the provisions of the charter of Troy so far as the same are applicable, except where those statutes are inconsistent with the provisions of the White act; and where they are inconsistent with that they are repealed, and the provisions of the latter act control. The provisions of the charter of Troy gave the mayor no power to remove, but only the power to suspend, a school commissioner. The power of removal was there committed to the common council. The provisions giving the power of suspension to the mayor and of removal to the common council are inconsistent with the provision of the White act giving power to the mayor to remove at pleasure, and are therefore repealed.

The relator contends that the intent of the legislature in passing the White act, and in including therein the provision (section 240) that "the department of public instruction shall continue as provided by law," was that the board of school commissioners shall continue organized, appointed, and held in office according to the provisions of law creating the department, and that the commissioners having been appointed under the authority of chapter 80, Laws 1892, their tenure of office for the term of three years is fixed and protected by the provision to that effect in that law. It cannot be intended by this to insist that nothing in the White act was intended to or did affect the department of public instruction, for that conclusion gives no force to several provisions of that act which have effected important changes in the powers of the school board; and to support the contention of the relator, it seems to me, is to also ignore the effect of the repeal by that act of statutes inconsistent with it. That such changes have been effected is shown by the recent case of People v. Rickerson, 56 App. Div. 588, 67 N. Y. Supp. 248, where it was held that the provision of subdivision 5, § 11, c. 80, Laws 1892, that "the said board of school commissioners shall  *  *  *  have the custody and safe keeping of the schoolhouses, outhouses, books and furniture," was repealed by the provisions of the White act that the city engineer "shall act as the superintendent of public buildings" and "shall employ such subordinates to serve during his pleasure, and shall have such other assistance as the board of estimate and apportionment shall prescribe," and therefore that the school board no longer had authority to appoint janitors of school buildings. Numerous other provisions of the later law are inconsistent with those of the former. For instance, under chapter 80, Laws 1892, § 11, it was the duty of the school board, and they had the power, to fix and pay the salaries of teachers, of the clerk, and of the superintendent of schools, while under the White act (section 98) it is made the duty of the board of estimate and apportionment to fix the salaries or compensation of all city officers and employés, except those who serve without compensation. So under the former law (section 11) the school board had the power and it was their duty to alter, improve,

and repair school houses and appurtenances, and to purchase, exchange, improve, and repair school apparatus and furniture, and provide books for indigent pupils, while under the later act (section 120) there is created a board of contract and supply, which are charged with the duty, after public notice, to let to the lowest bidder, who will give adequate security, all contracts for the performance of any work or for the supply of any materials for the various city departments, including the department of public instruction, in all cases where the work and materials will cost to exceed $50, unless by an ordinance passed by an unanimous vote of the common council, and by the unanimous approval of the board of estimate and apportionment, it is determined to be impracticable to procure the work or materials by contract. This is sufficient to show that, when the legislature said that "the department of public instruction shall continue as provided by law," it did not mean that it was to continue without change, and subject only to the provisions of the laws creating the department in the various cities of the second class, but, rather, meant that the department or the boards of school commissioners, whether appointed by the mayors, as was the case in Albany and Troy, or elected by the people, as was the case in Syracuse and Rochester, should continue to be so appointed or elected as provided by law, and with such changes as were made by virtue of the repeal of such provisions of the original laws creating the various boards as were inconsistent with the provisions of the White act. Thus does the department of public instruction in each of the cities of the second class continue as provided by law, just as the statute says it shall. It seems plain, therefore, that so far as chapter 80, Laws 1892, fixes the term of office of a school commissioner in Troy at three years, it must yield to the later provision contained in section 49 of the White act, giving the mayor authority to remove any city officer appointed by him, provided the mayor, in the exercise of his official duty, should see fit to abridge that term by a removal from office.

In a recent case in the court of appeals (Pryor v. City of Rochester, 166 N. Y. 548, 60 N. E. 252), Judge Martin reviews the history of the act for the government of cities of the second class (Laws 1898, c. 182), and discusses the legislative intent with reference to the powers conferred upon the mayor by that act. He quotes from the report to the legislature of the commissioners appointed by the governor to report general laws for the government of cities of the second class, of which Judge Earl was chairman, as follows (page 552, 166 N. Y., and page 253, 60 N. E.):

"We propose to give the mayor large power and great responsibility. He is the executive head of the city government. He appoints, and, under certain conditions, may remove, nearly all the city officers; and thus he can hold them all to responsibility for the manner in which they discharge their duties. He himself, after a hearing and a trial of charges preferred against him, may be removed from his office by the governor. Thus, if there be bad administration of city affairs, it is easy for the electors to place the responsibility, and to apply the remedy at the polls." Senate Documents 1896, vol. 5, No. 24.

After referring to various provisions of the act, Judge Martin says (page 554, 166 N. Y., and page 254, 60 N. E.):

"It is equally clear that the legislative purpose was to confer all the executive and administrative powers of the city upon the mayor and such officers and departments as were created by law or ordinance, and that all the city officers, except as otherwise specially provided, should be appointed by him and removed at his pleasure, thus imposing upon him, as mayor, the entire responsibility of the appointments to office and of the administration of the affairs of the city, to the end that there might be a responsible head, which, if unsatisfactory, could be deposed by the electors of the city, and existing evils consequently corrected."

I conclude that the mayor had the power, under section 49 of the White act, to remove the relator from office, and therefore that his complaint must be dismissed. This conclusion finds support in some recent cases arising under the provision of the charter of Greater New York, which authorizes the mayor, during the first six months of his term, to remove certain persons holding offices by appointment. People v. Nixon, 32 App. Div. 513, 53 N. Y. Supp. 230; People v. Van Wyck, 159 N. Y. 509, 54 N. E. 31. Judgment for the defendant, dismissing the complaint, with costs.

Complaint dismissed, with costs.