In the Matter of ALBERT HUTTON, Individually and as President of the Uniformed Firemen's Association, Local No. 461, A. F. of L., et al., Respondents, against OSCAR GOODSELL, as Treasurer of the Fire Fund of the Board of Fire Commissioners of the City of Kingston and as Treasurer of the City of Kingston, Appellant.

Third Department, November 10, 1948.

*James G. Connelly. Corporation Counsel,* for appellant..
*Francis Martocci* for respondents.

RUSSELL, J. . This is an appeal from an order made by the Special Term held at Kingston, New York, on the 6th day of February, 1948, and entered on the 2d day of August, 1948, in the office of the Clerk of Ulster County. Said order directed the appellant-treasurer to pay the salary checks of the firemen out of the fire fund and in accordance with the payrolls certified to him by the board of fire commissioners as long as there is money in this fund.

From the facts it appears that the board of fire commissioners of the city of Kingston held a meeting on the 6th day of December, 1947, and adopted a resolution setting minimum and maximum salaries for members of the paid fire department. This resolution was approved by the Municipal Civil Service Commission of the City of Kingston, and on December 10, 1947,

the board adopted a resolution granting increases in salaries, effective January 1, 1948, to members of the paid fire department in accordance with the resolution of December 6, 1947. This resolution was also approved by the Municipal Civil Service Commission on December 10, 1947.

On or about December 15, 1947, the board of fire commissioners presented to the mayor, by filing with the city clerk, a certified estimate of the moneys needed for the operation of the fire department for the fiscal year of 1948. Said estimate included both the salaries, as increased, together with other operating expenses of the department. It appears that the budget adopted for the fiscal year 1948, appropriated a total sum of $130,245.12 for all fire purposes including salaries. The payroll and checks submitted to the appellant on or about January 15, 1948, were based on annual salaries totalling $144,126.64. It, therefore, follows that to compel the appellant-respondent to sign checks based on the annual salaries as estimated by the fire board would result in the budgetary appropriation for all fire purposes being exhausted by the salary estimate of the fire board before the end of the fiscal year.

Between December 15 and 31, 1947, the mayor then in office presented a proposed budget for the fiscal year 1948, at a public hearing. After being read, the budget was filed in the office of the city clerk, although the approval or disapproval of the mayor then in office was neither noted on, nor annexed to the estimate. Said proposed budget, containing the estimate of the fire board, by being filed with the city clerk inferentially contained the approval of the mayor. This proposed budget exceeded the 2% constitutional tax limitation by approximately $200,000.

On January 1, 1948, the mayor taking office presented to the common council his annual message, together with the proposed budget of the retiring mayor and recommended that said budget should not be adopted. On January 6, 1948, the common council regularly met and at that time the mayor presented a new proposed budget for the fiscal year 1948. This new proposed budget included an estimate of the salary requests of the fire department which was less than that as fixed and determined by the fire board by its resolutions of December 6th and 10th, and this was done without the consent and approval of the fire board. The mayor's new proposed budget was adopted by the common council without change.

On January 15, 1948, the fire board prepared its payroll which covered the salary of its employees and the pay period from January 1 to January 15, 1948. Said payroll was based upon

the resolutions of December 6 and December 10, 1947. Pay checks in accordance with said payroll were signed by the president and clerk of the fire board, together with the certified payroll, and presented to the appellant-treasurer who refused to sign or honor them, and returned said checks unsigned to the board of fire commissioners. Pending the determination of this proceeding, and pursuant to stipulation, the petitioners-respondents are being paid on the basis of the 1948 wage rate, plus annual increments and cost of living bonus.

The principal question to be determined on this appeal is — has the Common Council of the City of Kingston pursuant to its charter the power to increase or decrease the estimate of the board of fire commissioners submitted to it upon recommendation of the mayor? An approach to this question necessarily involves the construction of different sections of the charter. Section 122 of the charter provides in part as follows: " On or before the fifteenth day of December in each year the board of charities, the board of police commissioners, the board of fire commissioners, the board of health, and the board of public works shall each estimate, certify and present to the mayor by filing the same with the city clerk, the estimates required by this act, * * *." (L. 1896, ch. 747, as amd. by L. 1918, ch. 206.) These estimates are then presented by the mayor then in office with such recommendations as he may think proper. (Kingston City Charter, § 123; L. 1896, ch. 747, as amd. by L. 1915, ch. 611.)

The mayor recommended that the budget of the retiring mayor should not be adopted and presented another budget which was adopted by the common council. Section 123 further provides: " The common council shall then proceed to consider such estimates and may revise the same by increasing or reducing the amount thereof, and shall, subject to the veto of the mayor as to any item thereof, finally determine the amount to be included in the annual city tax levy. * * *"

It is plain from this wording of the charter that the common council has the power to increase or reduce the amount of any estimate and determine any item in said estimate. However, the amount set forth in said budget, pursuant to section 123, may be increased by the mayor subject to the approval of the common council. If any of said estimates are increased, section 123 provides that said estimates so increased may exceed the maximum amount limited by said charter. If said amounts shall not be so increased, they shall not in any case exceed the maximum amount hereinafter limited, which is $25,000. (Kingston City Charter, § 124.)

It is the contention of the petitioners-respondents that the common council did not reduce the salaries as fixed by the fire board because the estimate of the fire board was not before the common council at the time it acted on the mayor's proposed budget. The estimate of the fire board was in the budget of the retiring mayor. However, the mayor in office on January 1, 1948, having recommended that the budget including the estimate of the fire board should not be adopted, the common council upon such recommendation adopted another budget submitted to it by the mayor which included an estimate for the fire board, which in the opinion of the mayor was sufficient under the financial condition of the city. The council by its action provided for the fiscal year of 1948. It was the duty of the council to provide its various boards and departments with finances for the ensuing year.

The firemen's association presents the issue that since the fire board has the power to fix salaries, therefore the duty rests upon the appellant to disburse the money in the fire fund in accordance with the directions of the fire board. The issue presented on this appeal clearly appears to be much broader and especially more vital to the interests of the taxpayers and the financial condition of the city. The association in attempting to uphold its theory relies upon the law as presented in *Pryor* v. *City of Rochester* (166 N. Y. 548). In that case a deputy comptroller of the city of Rochester was appointed by the comptroller and his salary fixed by the board of estimate and apportionment pursuant to section 98 of the Second Class Cities Law (L. 1898, ch. 182). The common council had the power to reject any item submitted in the estimate and reduced the salary of the deputy by refusing to appropriate the money requested for such salary as fixed by the board in the annual estimate. The distinction between that case and the instant one is: that the Second Class Cities Law provided that the salaries so fixed by the board were not to be changed until the expiration of the term for which the deputy was appointed. No such restriction is laid upon the power of the common council in the case under consideration. The Charter of the City of Kingston expressly grants the power to increase or decrease any estimate or item thereof.

The court in the *Pryor* case (*supra*, pp. 554–555) very pointedly stated in referring to the fixed salary of the deputy comptroller as follows: " It having been fixed at twenty-two hundred dollars a year, he was plainly entitled to compensation

for the time he had served at that rate, unless there is some other provision of the act which authorized the common council to reduce that amount." In the instant case there is other provision authorizing the common council to reduce any amount in any estimate.

In *Matter of Emerson* v. *Buck* (230 N. Y. 380) the common council reduced the estimate presented by the board of education as to the salaries for teachers. The board took the position that it had the power to fix salaries and engage such employees as it may think wise and that " the council must then accept its estimate without criticism and allow the money required to meet it, however much the other activities of the city may suffer." (P. 385.) This spirit of the board arose from statutes of the State which by intent created independent boards of education which under its own authority could bring about a higher class of education. The court in reaching its conclusion to the effect that the common council had power to reduce stated (p. 388): " Such a board has no detailed knowledge of public needs. It knows nothing of the number of police required, or of the demands to safeguard the public health. Its view is limited to its own department, of course important, but likely to be regarded as of unique importance by those who have its interest at heart. In all governments, in the nation, the state, the city, the problem is to reconcile a hundred pressing needs so that the total of the appropriations shall not be excessive."

It is well recognized by the authorities that boards of education are independent bodies beyond the control of municipalities and politics, except that the common council of a city has the power to reduce in its discretion the total estimate presented by a body for school purposes. (*Matter of Divisich* v. *Marshall*, 281 N. Y. 170, 174.)

The charter of the City of Kingston grants no such independence of authority to the board of fire commissioners except that said board may fix the salaries. The amount of the fund for purposes to be used by the fire board rests entirely in the discretion of the common council and from such fund the board may fix the salaries of the firemen. Since the common council and the mayor have the power by the charter to determine the estimate of any board of the city, the fire board must fix the salaries of the members of the fire department within the amount of the money appropriated and made available by the common council for the purposes of said board. Any other course pursued might result in an early bankruptcy of the funds of said city appropriated for the year and shackle the efficiency of different departments.

The power to tax rests entirely with the legislative department of the city and, therefore, the legislative department is to determine how much money is to be spent and for what purposes. The power to expend rests with the different executive departments, but the power to raise an appropriation rests with the legislative department and must be kept separate. The governmental structure of a city must necessarily be left to the legislative body which is the guardian of the public treasury. It would be unsafe to permit and uphold the estimates of each and every department no matter what effect it would have upon the public needs and the constitutional tax limitation.

It would be unwise for the city treasurer to sign payroll checks knowing that the amount of said checks would exhaust the payroll fund before the end of the fiscal year and exceed the appropriation made by the common council for the year, and also knowing that the amount of the checks presented for signature was based on an estimate not adopted by the council. It was his duty to refuse to sign payroll checks on or about January 15, 1948, when the amount of said checks was based on annual salaries in excess of the fund made available by the council.

The order appealed from should be reversed on the law and the facts, without costs.

HILL, P. J., BREWSTER, FOSTER and DEYO, JJ., concur.

Order reversed, on the law and facts, without costs.