Norman L. Harvey, J.
The City of Plattsburgh seeks an order directing that an arbitration award dated July 29, 1970 between the parties be vacated pursuant to CPLft 7511 (subd. [b], par. 1, cl. [iii]).
On or about September 19, 1968 the American Federation of State, County and Municipal Employees AFL-CIO Local 788 was recognized as the sole and exclusive bargaining agent for all water and sewer department employees, general maintenance and service employees, and clerical employees of the City of Plattsburgh. Having been so recognized, negotiations began between the city and the union to create a labor contract pursuant to the Taylor Act (Civil Service Law, art. 14). Negotiations reached an impasse and a fact finder was appointed on November 6, 1968 as provided for in the Taylor Act. The fact finding report, issued on January 14,1969 included, among other things, a recommendation that all benefits be effective as of January 1, 1969. Ultimately, an agreement was reached and ratified by the Common Council of the City of Plattsburgh and by the union members and the agreement was signed on or about August 27, 1969. The contract provided for an effective date “ as of the 1st day of January, 1969 ”.
A controversy thereafter arose under the contract concerning the effective date of the overtime and accumulated sick leave provisions of the agreement. Grievances were filed by the union and arbitration proceedings were conducted. The arbitration award held that the accumulated sick leave benefits were effective as of January 1, 1969.
Although briefs submitted by both parties would indicate otherwise, argument of counsel narrowed the controversy to the resolution of a single issue.
The City of Plattsburgh finds itself in a dilemma. It has entered into a labor contract which was negotiated over a long period of time. The contract was signed on August 27, 1969. Section 39 of the agreement states: ‘ ‘ This Agreement shall be effective as of the First day of January, 1969, and shall continue in full force and effect until the 30th day of June 1970.” The city is faced with a decision of whether or not to comply with the contract in respect to its retroactive provisions in view of a published opinion of the State Comptroller who advises the city and who also audits its accounts.
The State Comptroller in Opinion 68-61 (Feb. 9, 1968) answered the following inquiry from the City of Jamestown: *746 ‘ ‘ Where a city is negotiating with several bargaining units representing various municipal employees, may any wage increases agreed upon be retroactive? ”
The conclusion reached by the Comptroller was ‘ ‘ A city may announce that salary increases will be effective from a specified date, but may not make the effective date of the increase one which is prior to the city’s actual announcement of its policy.”
From the evidence before the court, it is apparent that the City of Plattsburgh made no such announcement. Consequently, the city now takes the position that it is prohibited from honoring the retroactive provision of the contract.
The Comptroller’s opinion relies upon the decision in Timmerman v. City of New York (69 N. Y. S. 2d 102 [1946]). The issue before the court on this motion is whether the Timmerman opinion should be construed as narrowly as the Comptroller’s opinion would indicate. Certainly there can be no quarrel with the decision in Timmerman. There was agreement between the city and the union that there would be an increase in wages at the beginning of the new fiscal year. The only uncertainty was the amount of the increase. The city announced that the effective date of the increase would be the beginning of the fiscal year even though an agreement as to the amount might not be reached until later. It was very clear that the retroactive effect of the ultimate agreement did not constitute a gift. It was in payment for services rendered at a rate determined later.
But, in the instant case, were the parties obligated to use the same technique? There was no statutory law prohibiting retroactive pay increases payable by a municipality simply because they were retroactive. The applicable law is: “No county, city, town, village or school district shall give or loan any money or property to or in aid of any individual, or private corporation or association, or private undertaking”. (N. Y. Const., art. VIII, § 1.) The problem of retroactivity is that historically it carries with it the stigma of gratuity.
But, after analysis of the instant situation in the light of the evolution of public employee labor relations, including the Taylor Act, the court concludes that the test applied in Timmerman is not the sole test.
Black’s Law Dictionary defines a “ gratuity ” as “ something acquired without bargain or inducement ’ ’. The court concludes' that retroactive pay increases are not gifts if they were in consideration of a benefit received by the city. “ Being a contractual relationship, this court will favor those terms agreed to by the parties unless sufficient constitutional or statutory objection *747 is shown. * * * In McKenzie v. Harrison (120 N. Y. 260, 265), the court pointed out that ‘ a gift is a voluntary transfer of any property or thing by one to another without consideration Thus, the transfer of money in consideration of services performed is not a gift. * * The inducement to enter and remain in public service * * * is valid consideration to the State and not within the constitutional ban.” (Lecci v. Nickerson, 63 Misc 2d 756, 760-761.)
Because of the Taylor Law, the city was obligated to bargain for and .to enter into a labor contract. Obviously, the scope of subject matter included in labor contracts today is much larger than it was 25 years ago. The court cannot state as a matter of law that any single provision of the instant contract was not an inducement to effectuate the executed agreement. The ultimate benefit to the city was a contract which provided necessary services to the city for a period of time beyond the date of signing.
The undisputed evidence before the court at this time does not indicate error on the part of the arbitrators. However, it is possible that the city, relying upon the Comptroller’s opinion, failed to submit evidence which might have resulted in a different award by the arbitrator.
It is the decision of the court that the city’s motion be dismissed unless it demands a rehearing of the arbitrator as to the single issue involved upon this application. In the event of such a demand, the matter will be resubmitted to the arbitrators for factual resolution in accordance with the principles of law expressed herein.
Submit order in accordance herewith. The order should direct that demand for rehearing, if desired by the city, must be made within 20 days.