Jambs P. O’Donnell, J.
A show cause order has been brought on before this court pursuant to CPLB article 78, seeking a determination as to the proper body to confirm a public labor contract, negotiated between the Mayor of the City of Utica and the petitioner, John E. Creedon Police Benevolent Association, Inc., of Utica, New York. The nature of the proceeding is in the form of a writ of certiorari, which seeks to determine if the Common Council of the City of Utica exceeded its jurisdiction in disapproving of the particular labor contract. (Matter of Gifts by Wire v. Bruckman, 253 App. Div. 350, affd. 278 N. Y. 499.) Certiorari will lie whenever an action of a legislative body transcends the power which had been delegated to it. (People ex rel. Schick v. Marvin, 249 App. Div. 293, affd. 275 N. Y. 587.)
The controversy has been submitted upon agreed statement of facts. It appears from the moving papers that an ordinance was passed on August 7, 1968 by the Common Council of the City of Utica recognizing the John E. Creedon Police Benevolent Association, Inc., of Utica, New York as the exclusive bargaining agent and representative for all full time salaried uniform and investigatory personnel within the Utica Police Department and the Mayor or his designate was authorized *730 and empowered on behalf of the city to negotiate collectively with the bargaining agent as to the terms and conditions of employment of the Police Department and to execute the written agreement on behalf of the city, under the provisions of section 204-a of article 14 of the Civil Service Law of the State of New York. That pursuant to said ordinance, Mayor Michael R. Caruso negotiated with the petitioner and subsequently agreed upon a new agreement to be effective January 1, 1974 and to terminate December 31, 1975. The said agreement was reduced in writing and signed by the petitioner and the aforesaid Mayor, that the said agreement was submitted to the Common Council of the City of Utica for approval or disapproval on November 21, 1973. Upon a vote of the council on the aforesaid date, the contract was voted down 5 to 4. Shortly thereafter, on December 17, 1973, the Corporation Counsel for the City of Utica, presented the salaries contained in the' new labor agreement to the Board of Estimate and Apportionment for approval and the said Board of Estimate and Apportionment voted 4 to 1 in favor of the salaries as contained in the new agreement with the stipulation subject to the ruling of this court, if, in fact, the board had authority to so vote on the salaries of city employees, and that the Common Council acted in excess of its jurisdiction.
It is the contention of the petitioner that the Board of Estimate and Apportibnment has the exclusive right .to set salaries of officers and employees of the city, pursuant to section 74 of the ¡Second Class Cities Law of the State of New York. Section 74 of the Second Class Cities Law reads as follows: “The board of estimate and apportionment, except as otherwise provided by law, shall have authority to fix the salaries of compensation, and determine the positions and numbers of all city officers and employees, of each office, board and department ”. This particular section has been modified from time to time by the City of Utica, by local law, beginning in 1950 with Local Law No. 1 which modified the salary of the Board of Assessors raising the salary of said board members. Thereafter, by Local Law No. 1 of 1951, the chairman of the said Board of Assessors had a salary raise. In each instance, the Common Council modified this particular section by local law, pursuant to authority granted to it by a home rule law. Thereafter, Local Law No. 5 of 1959 further modified the provisions of this statute. In 1967, Local Law No. 7 of the City of Utica, which related to salary, wages and compensation paid to members of the Department of Public Safety was approved by the *731 Mayor January 22, 1968 and filed in the office of the Secretary of State on February 2, 1968 and this particular Local Law specifically superseded and repealed the application of section 74 of the Second Class Cities Law. In this particular Local Law, the Common Council reserved unto themselves the power to increase salaries, wages and compensation of employees in the Department of Public Safety, with the recommendation of the Commissioner of Public Safety and approval of the Board of Estimate and Apportionment. Thereafter in 1969, Local Law No. 5, was passed unanimously by the Common Council which repealed Local Law No. 7 of 1967, relating to salaries and wages of the members of the Department of Public Safety, which law was to take effect January 1, 1970. This last Local Law reverts all salaries and compensation matters hack to section 74 of the Second Class Cities Law.
For many years, it has been the holding of the courts in this State that the powers of the Board of Estimate and Apportionment of a city of the second class to fix salaries of .employees is absolute .and that the Common Council may not change the salaries on its own act. (Pryor v. City of Rochester, 166 N. Y. 548.) The ruling in the Pryor case was followed in Matter of Batemen v. Mayor of City of Mt. Vernon (247 N. Y. 250 [decided 1928]) when the court recited that the Common Council had no power to diminish or reject any item which relates to salaries, nor to refuse to appropriate money necessary to pay them.
In each particular case, the particular charters of the different cities would have a bearing upon the outcome of the problem. (Matter of Emerson v. Buck, 230 N. Y. 380.) The courts have even held that the Board of Estimate would have the power to create the position as well as the power to abolish the position under section 74 of the Second Class Cities Law. (Anker v. Dibble, 236 App. Div. 613.)
The Board of Estimate and Apportionment, except as otherwise provided by laio, has authority to fix salaries and compensation of all city officers and employees of each office, hoard and department in section 74 of the Second Class Cities Law (39 N. Y. Jur., Municipal Corporations, ■§ 683).
In 1967, the New York State Legislature, in keeping with social trends in this State, adopted the Public Employees’ Fair Employment Act, which is article 14 of the Civil Service Law (the Taylor Law), which granted to municipal and public employees the right to organize and negotiate for compensation, working conditions, etc. In doing so, they limited the absolute right of the Board of Estimate and Apportionment of the cities *732 operating under the Second Class Cities Law to set salaries, wages, good working conditions and made this procedure a negotiable matter. Under section 204-a of the Civil Service Law, which relates to agreements between public employers and public employees’ organizations, the law recites as follows (subd. 1): “ Any written agreement between a public .employer and an employee organization determining the terms and conditions of employment of public employees shall contain the following notice in type, not smaller than the largest type used elsewhere in such agreement: ‘ It is agreed by and between the parties that any provision of this agreement requiring legislative action to permit its implementation by amendment of law or by providing the additional funds therefor, shall not become effective until the appropriate legislative body has given approval. ’ ” The court calls attention to the fact that the cases previously cited referring to section 74 of the Second Class Cities Law were all .decided prior to adoption of article 14 of the Civil Service Law.
The court must construe language of a statute as it finds it, not as to what the court believes it should have been written. (People v. Olah, 300 N. Y. 96; 56 N. Y. Jur., Statutes, § 106.) It appears to this court that legislative action is necessary to implement this contract, since it cannot be argued that you have a binding contract on the city signed only by the Mayor without approval of the legislative body. Unquestionably, the Board of Estimate and Apportionment is not a legislative body, but is composed of the Mayor, the Comptroller, Corporation Counsel, President of the Common Council and City Engineer, as spelled out in section 71 of the Second Class Cities Law. The court’s attention is brought to the fact that all previous contracts entered into by the petitioner and the city, to wit: April 16, 1969, November 5, 1.969, February 3, 1971 and January 8, 1973 were all submitted to the legislative body of the City of Utica for approval or disapproval. The court is apprised also that the only reported cases of this court’s attention call for a legislative approval. (Matter of American Federation of State, County & Municipal Employees, AFL-CIO [City of Plattsburgh], 72 Misc 2d 744; City of Albany v. Helsby, 65 Misc 2d 28.) In the City of Albany case, the court states that “ The State Legislature, in its wisdom, reposed the final determination in a matter involving economic considerations and the public interest of a political subdivision involved, as well as the interest of its employees, in the legislative body of the public employer ”. (City of Albany v. Helsby, supra, p. 31.) *733 Section 30 of the Second Class Cities Law specifically spells out and vests in the Common Council the legislative power of a city.
It is the court’s opinion that the contract in its present form does not constitute a valid obligation of the City of Utica, but must require the legislative approval of the Common Council. The matter should go back before the negotiating parties and if an agreement is not reached in the required number of days, they should proceed under section 209 of the Civil Service Law. This decision refers only to this particular contract of employment and should not be read to further abridge the right of the Board of Estimate and Apportionment to set salaries, compensation and working conditions upon those city officers and employees not encompassed by this Public Employment Labor Contract. The petition be and hereby is dismissed, without costs.