QUESTIONS: 1. Does a teacher's salary contract providing for a salary increase which is entered into through collective bargaining subsequent to the beginning of the salary year represent a claim for extra compensation prohibited by s. 215.425, F.S.? 2. Are teachers' salary contracts entered into subsequent to the start of the school year in any way affected by s. 215.425, F.S.? 3. Can subsequent salary adjustment be made for the time period from the beginning of the salary year to the time when the salary increase is made effective pursuant to the collective bargaining agreement?
SUMMARY: Pending legislative or judicial clarification, a teacher's salary contract providing for a salary increase which is entered into through collective bargaining subsequent to the beginning of the salary year does not represent a claim for extra compensation prohibited by s. 215.425, F.S. Therefore, subsequent salary adjustments or supplemental payments made after a collectively bargained agreement is approved and ratified, and which are made pursuant to and in performance of said agreement, would not appear to represent "extra compensation" prohibited by s. 215.425. After extensive research, I am unable to find any previous opinion rendered by this office or judicial decision which directly addresses the questions which you have posed, since your questions are determined by the relationship existing between s. 215.425, F.S., and Part II, Ch. 447, F.S. (1974 Supp.), commonly known as the Public Employees Relations Act, which was adopted by the 1974 Legislature and became effective on December 16, 1974. Section 215.425, F.S., provides that: No extra compensation shall be made to any officer, agent, employee, or contractor after the service shall have been rendered, or the contract made; nor shall any money be appropriated or paid on any claim, the subject matter of which shall not have been provided for by preexisting laws, unless such compensation or claim be allowed by bill passed by two thirds of the members elected to each house of the legislature. As previously indicated in AGO 075-224, the intent of the Legislature in enacting the Public Employees Relations Act clearly appears to allow the ratification of a bargaining agreement to be completed and the appropriation to be requested after the normal budget deadlines or the commencement of the fiscal year. See s. 447.309(2) and (4), F.S. (1974 Supp.). It is further clear that s. 215.425, F.S., must be construed in relation to and in harmony with the Public Employees Relations Act and the apparent intent of that act to provide a means by which meaningful collective bargaining negotiations can be conducted and the results of such negotiations effectuated through an approved and ratified agreement. It has long been recognized as a rule of statutory construction that a statute should be construed together with, and in harmony with, any other statute relating to the same subject matter or having the same purpose, even though the statutes were not enacted at the same time. Mann v. Goodyear Tire and Rubber Co., 300 So.2d 666 (Fla. 1974); City of Coral Gables v. Board of Public Instruction of Dade County, 313 So.2d 92 (3 D.C.A. Fla., 1975). However, if a court can, by any fair, strict, or liberal construction, find that two apparently contradictory statutes can be reasonably harmonized without destroying their evident intent and meaning, and at the same time preserving the force of both, it is the duty of a court to so construe such legislative enactments. State ex rel. School Board of Martin County v. Department of Education, 317 So.2d 68 (Fla. 1975). The specific situation to which your question refers is as follows: A collectively bargained agreement between a teacher bargaining agent and a school board calls for a $1,200 increase during the current school budget year. However, said collectively bargained agreement has not been entered into, ratified, and approved until 2 months after the beginning of the current school budget year. Thus, only 10 months remain until the end of the current school year. Rather than having the entire $1,200 increase paid in a 10-month period with equal monthly increases of $120, the teacher bargaining agent prefers to have the contracted-for monthly increase paid $100 per month with a $200 supplement being received in the first paycheck after the approval and ratification of the agreement for all teachers employed on the date the agreement is approved and ratified and who have in fact been employed since the beginning of the school budget year. It should be noted that this type of supplemental compensation paid pursuant to a collectively bargained agreement under Part II, Ch. 447, F.S. (1974 Supp.), does not appear to be the type of prohibited "extra compensation" referred to in s. 215.425, F.S. The commonly accepted meaning of the word "extra" includes "something in addition to what is due, expected, necessary, or customary." See Webster's New International Dictionary, 2nd Edition, Unabridged, p. 902. "Extra" as an adjective or a noun expresses an idea of something beyond, in addition to, or in excess of what is due, usual, or necessary; and, as used in building or similar contracts, denotes something done or furnished in addition to, or in excess of the requirement of the contract; something not required in the performance of the contract. Fullerton v. City of Des Moines, 115 N.W. 607, 611 (Iowa 1908). It appears clear that the term extra as used in connection with performance on contracts means and refers to something which is not required in performance of said contract. Trinity Builders, Inc. v. Schaff, 199 N.W.2d 914, 918 (N.D. 1972). Since your question refers only to properly ratified and approved collectively bargained agreements, and since the subsequent salary adjustments or supplemental payment to which your question refers are to be made pursuant to, and as a result of, said collectively bargained agreement, it does not appear that said salary adjustment or supplemental payment falls within the prohibited category of "extra compensation" referred to in s. 215.425, F.S. Rather than being above and beyond what is expected, said payments appear to be merely in performance of, and pursuant to, an agreement reached by both the teacher bargaining agent and school board. From the facts of your question it appears that the teachers did not actually sign any contracts until the collective bargaining agreement had been ratified and revised salary schedules adopted in accordance with that agreement. Thus, they were simply performing their services in accordance with the old salary schedule adopted for the previous year and without any binding contract applicable to the new school year. The purpose of s. 215.425, supra, (prohibiting extra compensation for work already performed) is to carry out the basic and fundamental principle that public funds may be used only for a public purpose, and it is contrary to this policy to use public funds to give bonuses to public employees for work they have already performed for an agreed-upon wage. Here, the teachers did not perform their teaching services for an agreed-upon salary under a binding contract; they performed these services pending the negotiation of contracts for the new year pursuant to the collective bargaining negotiations authorized by the Constitution and salary schedules adopted pursuant thereto — apparently, with the understanding that the new contracts would incorporate the new salary schedule to which they would be entitled for the entire year. It should be noted that courts in other jurisdictions have recognized that benefits paid pursuant to collectively bargained contracts do not have the effect of gratuities and thus are allowable. American Federation of State, County Municipal Employees, AFL-CIO, Local 788 v. City of Plattsburgh, 340 N.Y.S.2d 18 (1971); San Joaquin County Employees Assn., Inc. v. County of San Joaquin, 69 Labor Cases-Labor Law Reports s. 52,964 (Cal.Super.Ct., 1972). Such cases are persuasive in addressing the questions you have raised. It might be noted also that there is nothing in the present School Code that specifically requires the teachers' salary schedules to provide for equal monthly payments. Such a requirement was made by an amendment to s. 236.02(3), F.S., of the School Code in 1949 (Ch. 25363, 1949, Laws of Florida), providing that personnel employed for 12 months "shall be paid in 12 equal installments," and personnel employed for 10 months and paid on a 10-month schedule should be paid one-tenth of the total annual salary "by the close of each calendar month of service." The statute was again amended in 1965 by Ch. 65- 239, Laws of Florida. As amended, it continued to require personnel employed on a 12-month basis to be paid "in twelve equal installments," but amended subsection (b) to provide that: The county board shall adopt a payment schedule for personnel employed for less than twelve months, the salary for which period of employment shall be paid in monthly payments as nearly equal as practicable. (Emphasis supplied.) Chapter 72-221, Laws of Florida, amended s. 236.02, F.S., to eliminate these requirements that payments be made in "equal installments" or "as nearly equal as practicable." Thus, insofar as the provisions of the School Code presently in effect are concerned, the collective bargaining agreement could provide for a definite salary schedule for a definite term, as required by law, with the amounts of the monthly payments to vary in accordance with the agreement of the parties, as there is now no requirement by statute or rule that the monthly payments must be equal or even "as equal as practicable." There appears to be no difference, technically, in spreading out a "lump-sum" cost-of-living bonus in equal monthly installments in supplemental teachers' contracts (which was approved in AGO 051-182, Biennial Report of the Attorney General, 1951-1952, p. 402, at a time when s. 236.02(3), F.S., required teachers' salaries to be paid in equal monthly payments) or in spreading out the salary increase agreed upon in a collective bargaining agreement in equal payments over the remainder of the school or salary year to which the agreement applies, and in providing in the revised salary schedule for the payment of a larger portion of the increase at the end of the first month of service under the agreement and in equal monthly payments thereafter. Ideally, of course, collective bargaining agreements would be negotiated prior to, and would take effect at the beginning of, the salary year so as to be incorporated in the salary schedules and teachers' contracts for the full year. Obviously, however, this cannot be done in every case. Therefore, pending legislative or judicial clarification, it seems that it would not be unreasonable to construe s. 215.425, supra, in light of the apparent purpose and intent of the collective-bargaining act to negotiate reasonable wages for the salary year. See s.447.405, F.S., requiring the special master appointed to decide an unresolved issue as to wages to compare the "annual income" of the public employees in question with the "annual income" of other public employees in the circumstances therein mentioned. Finally, it must be emphasized that the Public Employees Relations Act specifies that: If less than the requested amount is appropriated, the collective bargaining agreement shall be administered by the chief executive officer on the basis of the amounts appropriated by the legislative body. The failure of the legislative body to appropriate funds sufficient to fund the collective bargaining agreement shall not constitute, or be evidence of, any unfair labor practice. [Section 447.309(2), F.S. (1974 Supp.).]